NOWELL AMOROSO KLEIN BIERMAN, P.A.
155 Polifly Road
Hackensack, NJ 07601
(201) 343-5001
William D. Bierman (WB-8955)
Rick A. Steinberg (RS-7396)
ATTORNEYS FOR PLAINTIFF,
YELLOW FREIGHT SYSTEMS, INC.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

_____

YELLOW TRANSPORTATION, INC., f/k/a
YELLOW FREIGHT SYSTEMS, INC.,

Plaintiff,

v.

UNDERWRITERS INSURANCE COMPANY,
THE CONTINENTAL INSURANCE COMPANY,
and XYZ CORPORATIONS, fictitious entities,

Defendants.

_____

Case No. 07 CIV 4764

Civil Action

**COMPLAINT FOR
BREACH OF CONTRACT**

## INTRODUCTION

1.  Plaintiff, Yellow Transportation, Inc., f/k/a Yellow Freight Systems, Inc. ("Plaintiff" or "Yellow"), through its counsel, Nowell Amoroso Klein Bierman, P.A., by way of Complaint against Defendants, Underwriters Insurance Company ("Underwriters") and The Continental Insurance Company ("Continental") (collectively, "Defendants" or the "Insurance Companies"), and by way of Complaint against fictitious entities, XYZ Corporations ("XYZ"), avers as follows:

## JURISDICTION AND VENUE

2.  Yellow is an Indiana corporation with its principal place of business located at 10990 Roe Avenue, Overland Park, Kansas 66207.

3.  Upon information and belief, Underwriters is a Nebraska

corporation with its principal place of business located at 10306 Regency Parkway Drive, Omaha, Nebraska 68114.

4. Upon information and belief, Continental is a Pennsylvania corporation with its principal place of business located at 333 S. Wabash Avenue, Chicago, Illinois 60604.

5. XYZ are fictitious entities that may be the same companies as the Insurance Companies.

6. Federal court jurisdiction is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

7. The amount in controversy exceeds $75,000. Specifically, the amount owed by the Insurance Companies to Yellow is at least $82,975.94.

8. Venue is proper in the Southern District of New York, in that this case relates to an insurance subrogation case previously pending in this District, captioned Royal Insurance Company v. Yellow Freight Systems, Inc., Case No. 1:00-cv-07176-LLS. In addition, the events regarding the Insurance Companies' breach of a settlement agreement with Yellow, which form the gravamen of this Complaint, all transpired in this District.

## BACKGROUND FACTS

9. Yellow is a common carrier of goods engaged in interstate and international commerce.

10. The Insurance Companies previously agreed to a settlement of the insurance subrogation lawsuit brought by Royal Insurance Company ("Royal"), on behalf of its subrogor, Anixter, Inc. ("Anixter"), on a cargo claim. Pursuant to

the settlement, the Insurance Companies agreed to make payment to Yellow, but they have failed and refused to do so, despite continuous demands by Yellow that the Insurance Companies make payment.

11. The cargo claim by Anixter against Yellow arose out of an incident at sea. On September 8, 1999, Yellow signed for a shipment described as ten pieces of insulated wire and four reels of copper weighing 2,474 pounds from Anixter in Alsip, Illinois. The shipment was consigned to CMDR 56th Signal Battalion in Ft. Buchanan, Puerto Rico. While en route, the container in which this freight was stowed was lost at sea.

12. The shipment was in a container on board an ocean container carrier vessel owned or operated by a company known as Navieras. The Navieras vessel, the Humacao, left Jacksonville, Florida, en route to San Juan, Puerto Rico. On or around September 14-16, 1999, the vessel encountered extremely rough seas caused by Hurricane Floyd. The container went overboard and was lost at sea.

13. Yellow's Tariff 250 E, Rule 8., Section 1(b) states that "[t]he carrier shall not be liable for any loss thereof or damage thereto or delay caused by … perils of the sea…." There was, however, insurance through the Insurance Companies which covered all or part of the loss. The rates paid to Navieras included insurance of $75,000 per container.

## THE INSURANCE POLICY

14. On July 1, 1998, the term commenced of a certain policy of insurance, bearing broker's Policy Number JHMMI-JP 98 1113, by and between

the Insurance Companies and, as assureds, Holt Cargo Systems, Inc.; Holt Hauling and Warehousing System; Murphy Marine Services, Inc.; NPR Holding Corp.; NPR, Inc.; NPR-Navieras Receivables, Inc.; NPR, S.A.; The Holt Group, Inc.; The Riverfront Development Corp.; and, Wilmington Stevedores, Inc. (the "Insurance Policy").

15.     Pursuant to the Insurance Policy, the Insurance Companies decided to settle certain claims arising out of loss and/or damage to certain cargo and/or containers that were asserted against Navieras arising from the incident affecting the vessel owned and/or operated by Navieras known as the Humacao (the "Cargo Claims").

16.     Navieras exhausted its obligations under the Insurance Policy to pay any deductibles, such that the settlement of the Cargo Claims was to be made, pursuant to the Insurance Policy, solely and directly by the Insurance Companies from their own funds.

## THE ROYAL LAWSUIT

17.     On September 22, 2000, Royal filed its complaint against Yellow (the "Royal Lawsuit").  A copy of the Royal Lawsuit is annexed hereto as Exhibit "A."

18.     On January 11, 2001, Yellow filed an answer to the Royal Lawsuit (the "Answer").  A copy of the Answer is annexed hereto as Exhibit "B."

19.     A pretrial conference in the Royal Lawsuit was held before Judge Stanton on January 19, 2001 and a status conference in the Royal Lawsuit was scheduled for March 16, 2001.  A copy of the docket sheet from the Royal

4

Lawsuit (the "Docket Sheet") is annexed hereto as Exhibit "C."

20. Due to the fact that there were multiple lawsuits filed in various jurisdictions arising out of the Cargo Claims, and despite the fact that the Insurance Companies were not directly a party to the Royal Lawsuit, the Insurance Companies dealt with Yellow regarding both Anixter and other Cargo Claims in the context of the Royal Lawsuit. Through negotiations, Yellow and the Insurance Companies reached a global settlement of various Cargo Claims involving Yellow.

## THE SETTLEMENT

21. On March 8, 2001, Yellow's counsel wrote to the Insurance Companies' counsel, to confirm the settlement of certain of the Cargo Claims, including the Anixter claim (the "Settlement"). Pursuant to the terms of the Settlement, the Insurance Companies agreed to pay at least $82,975.94 to Yellow. A copy of Yellow's counsel's letter to the Insurance Companies' attorneys dated March 8, 2001 is annexed hereto as Exhibit "D."

22. On March 13, 2001, the Insurance Companies' attorneys responded to Yellow's counsel, confirming the basic terms of the Settlement. A copy of the Insurance Companies' attorneys' letter to Yellow's counsel dated March 13, 2001 is annexed hereto as Exhibit "E."

23. On March 15, 2001, Yellow's counsel responded by letter to the Insurance Companies' attorneys' letter dated March 13, 2001, agreeing to the terms of the Settlement. A copy of Yellow's counsel's letter dated March 15, 2001 is annexed hereto as Exhibit "F."

24.     Based on the Settlement, Judge Stanton signed a sixty day Order marking the Royal Lawsuit settled (the "Settlement Order"). A copy of the Settlement Order is annexed hereto as Exhibit "G."[1]

## THE NAVIERAS BANKRUPTCY

25.     On March 21, 2001, Navieras filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware.

26.     Due to the filing of the Navieras bankruptcy, the Insurance Companies refused to make payment to Yellow pursuant to the Settlement, presumably because they believed that the proceeds of the Insurance Policy could be considered an asset of Navieras' bankruptcy estate.

27.     On April 26, 2001, Judge Stanton so-ordered and memo-endorsed a letter from Royal's counsel dated April 25, 2001, extending the parties' time to consummate the Settlement until July 16, 2001. A copy of the Memo Endorsement dated April 26, 2001 is annexed hereto as Exhibit "H."

28.     On July 9, 2001, Judge Stanton so-ordered and memo-endorsed another letter from Royal's counsel dated July 3, 2001, further extending the parties' time to consummate the Settlement until November 16, 2001. A copy of the Memo Endorsement dated July 9, 2001 is annexed hereto as Exhibit "I."

29.     On or about September 14, 2001, Navieras, <u>at the behest of the Insurance Companies</u>, filed a motion in its bankruptcy case in Delaware for an order authorizing the Insurance Companies to pay the Cargo Claims. A copy of Navieras' bankruptcy court motion is annexed hereto as Exhibit "J."

---

[1] The Settlement Order bears the date March 16, <u>2000</u>, but from the date of the filing of the Royal Lawsuit and the chronology of events, it is clear that the correct date of the Settlement Order was March 16, <u>2001</u>.

30.     On September 26, 2001, the Bankruptcy Court entered an Order authorizing the Insurance Companies to pay the Cargo Claims (the "Bankruptcy Court Order").  A copy of the Bankruptcy Court Order is annexed hereto as Exhibit "K."

31.     The Bankruptcy Court Order states in pertinent part that "this Court finds that the Debtors [Navieras] have no legal or equitable interest in the insurance proceeds and/or the funds to be paid by the Insurance Companies respecting the Cargo Claims and that such funds are not property of the Debtors' Estates pursuant to 11 U.S.C. § 541…."  Further, the Bankruptcy Court Order states that "the Insurance Companies are authorized to settle and pay the Cargo Claims without further order of the Court…."  See the Bankruptcy Court Order at page 2.

32.     On November 5, 2001, Judge Stanton so-ordered and memo-endorsed another letter from Royal's counsel dated November 2, 2001, further extending the parties' time to consummate the Settlement until March 15, 2002. A copy of the Memo Endorsement dated November 5, 2001 is annexed hereto as Exhibit "L."

33.     On July 25, 2002, Navieras' bankruptcy case was converted from Chapter 11 to Chapter 7.

34.     Evidently due to the mistaken belief that the conversion of Navieras' bankruptcy case from Chapter 11 to Chapter 7 somehow voided the Bankruptcy Court Order, the Insurance Companies refused to make payment to Yellow pursuant to the Settlement.

**THE MOTION TO ENFORCE THE SETTLEMENT**

35. The Insurance Companies have continued to refuse to make payment to Yellow pursuant to the Settlement. Attached hereto as Exhibit "M" is an e-mail message from Yellow's counsel to the Insurance Companies' counsel, dated June 30, 2006, beseeching the Insurance Companies to resolve the matter.

36. On March 20, 2007, Yellow's counsel sent a letter to the Insurance Companies' counsel, requesting that the Insurance Companies resolve the matter without the need for court intervention. A copy of Yellow's attorney's letter to the Insurance Companies' attorney dated March 20, 2007 is annexed hereto as Exhibit "N."

37. On March 20, 2007, the Insurance Companies' attorney faxed a response to Yellow's attorneys, denying that they agreed to follow up with the Insurance Companies to attempt to bring this matter to a conclusion. A copy of the Insurance Companies' attorneys' faxed letter dated March 20, 2007 is annexed hereto as Exhibit "O."

38. On March 30, 2007, Yellow filed a motion in the Royal Lawsuit to enforce the settlement with the Insurance Companies (the "Motion"). A copy of the Motion is annexed hereto as Exhibit "P."

39. On May 11, 2007, Judge Stanton entering an Order denying Yellow's Motion to enforce the Settlement with the Insurance Companies for lack of jurisdiction (the "Order Denying Motion"). A copy of the Order Denying Motion is annexed hereto as Exhibit "Q."

40. The reason that Judge Stanton decided that the court did not have jurisdiction over the Insurance Companies is that the Insurance Companies were not directly parties to the Royal Lawsuit; and, they did not file notices of appearance in the Royal Lawsuit, although they participated in it.

41. Yellow brings this Complaint for breach of the Settlement contract with the Insurance Companies, *inter alia*.

## COUNT ONE
### (Breach of Contract)

42. Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 through 41 of the Complaint as if fully set forth herein.

43. The Settlement constitutes a contract between Yellow and the Insurance Companies.

44. The Insurance Companies breached the Settlement, by failing to make payment to Yellow pursuant to the Settlement.

45. As a result of the Insurance Companies' breach of the Settlement, Yellow has been damaged in an amount of at least $82,975.94, plus interest, court costs, and attorney's fees.

## COUNT TWO
### (Breach of the Covenant of Good Faith and Fair Dealing)

46. Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47. Every contract contains an implied covenant of good faith and fair dealing.

48. The Settlement contract between Plaintiffs and Defendants contained an implied covenant of good faith and fair dealing.

49. Defendants' actions constitute a breach of the implied covenant of good faith and fair dealing.

50. As a result of Defendants' breach of the covenant of good faith and fair dealing, Yellow has been damaged in an amount of at least $82,975.94, plus interest, court costs, and attorney's fees.

## COUNT THREE
### (Third Party Beneficiary)

51. Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52. The Insurance Companies issued the Insurance Policy to Navieras.

53. Yellow is a third party beneficiary of the Insurance Policy.

54. The Insurance Companies breached the Insurance Policy, by failing to make payment to Yellow pursuant to the Settlement.

55. As a result of the Insurance Companies' breach of the Insurance Policy, of which Yellow is a third party beneficiary, Yellow has been damaged in an amount of at least $82,975.94, plus interest, court costs, and attorney's fees.

## COUNT FOUR
### (Conversion)

56. Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 through 55 of the Complaint as if fully set forth herein.

57. By failing to make payment on the Settlement, Defendants willfully deprived Plaintiff of funds rightfully belonging to Plaintiff.

58. Defendants' conduct as set forth above constitutes conversion.

59. As a direct and proximate cause of Defendants' conversion of funds, Yellow has been damaged in an amount of at least $82,975.94, plus interest, court costs, and attorney's fees.

## COUNT FIVE
### (Breach of Fiduciary Duty)

60. Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61. Defendants owed a fiduciary duty to Plaintiff.

62. Defendant's conduct as set forth above constitutes a breach of fiduciary duty.

63. As a direct and proximate cause of Defendants' breach of its fiduciary duty to Plaintiff, Yellow has been damaged in an amount of at least $82,975.94, plus interest, court costs, and attorney's fees.

## COUNT SIX
### (Breach of Duty of Loyalty)

64. Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65. Defendants owed a duty of loyalty to Plaintiff.

66. Defendants' conduct as set forth above constitutes a breach of its duty of loyalty.

67. As a direct and proximate cause of Defendants' breach of its duty of loyalty to Plaintiff, Yellow has been damaged in an amount of at least $82,975.94, plus interest, court costs, and attorney's fees.

## COUNT SEVEN
### (Misappropriation)

68. Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 through 67 of the Complaint as if fully set forth herein.

69. The proceeds of the Insurance Policy constitute assets of Plaintiff.

70. Defendants used Plaintiff's assets for their own gain.

71. Defendants' conduct as set forth above constitutes misappropriation of assets that rightfully belong to Plaintiff.

72. As a direct and proximate cause of Defendants' misappropriation, Yellow has been damaged in an amount of at least $82,975.94, plus interest, court costs, and attorney's fees.

## COUNT EIGHT
### (Unjust Enrichment)

73. Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 through 72 of the Complaint as if fully set forth herein.

74. As a result of the actions described above, Defendants have received a benefit from Plaintiff whose retention by Defendants would be unjust.

75. Defendants' conduct as set forth above constitutes unjust enrichment.

76. As a direct and proximate cause of Defendants' unjust enrichment, Yellow has been damaged in an amount of at least $82,975.94, plus interest, court costs, and attorney's fees.

## COUNT NINE
### (Conspiracy to Commit a Tort)

77. Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 through 76 of the Complaint as if fully set forth herein.

78. The Insurance Companies and their employees, agents and representatives aided and abetted each other in taking the actions described above.

79. In so doing, Defendants worked with a common design and purpose, which was unlawful and tortious.

80. Defendants' conduct as set forth above constitutes a conspiracy to commit a tort.

81. As a direct and proximate cause of Defendants' conspiracy to commit a tort, Yellow has been damaged in an amount of at least $82,975.94, plus interest, court costs, and attorney's fees.

WHEREFORE, Yellow demands judgment against the Insurance Companies on Counts One through Nine of the Complaint in an amount no less than $82,975.94, plus interest, court costs, attorney's fees, and any other relief that the court deems just and equitable.

Dated: Hackensack, New Jersey
May 31, 2007

**NOWELL AMOROSO KLEIN BIERMAN, P.A.**
Attorneys for Plaintiff,
Yellow Transportation, Inc., f/k/a
Yellow Freight Systems, Inc.

By:   /s/ Rick A. Steinberg
      Rick A. Steinberg

G:\wp\WPDATA\CLIENT FILES\Y Files\Yellow Freight\049.Royal Insurance - Anixter, Inc\pleadings\complaint.doc